UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       NO. 15-154

PRICE, ET AL.                                SECTION A(3)


## ORDER AND REASONS

On June 12, 2015, a grand jury in the Eastern District of Louisiana returned a 45 count Indictment against defendants Leroy Price, Ashton Price, Alonzo Peters, Jasmine Perry, McCoy Walker, Terrioues Owney, Evans Lewis, Curtis Neville, Rico Jackson, Tyrone Knockum, Solomon Doyle, Washington McCaskill, and Damian Barnes. On April 29, 2016, a grand jury in the Eastern District of Louisiana returned a Superseding Indictment against Defendants. Jackson, Knockum, and McCaskill testified as cooperating witnesses.

Trial commenced on January 9, 2017, and the presentation of evidence lasted about six weeks. The jury began its deliberations on February 14, 2017. On February 21, 2017, the jury returned its verdict finding each of the defendants guilty as to certain counts; many were acquitted as to other counts. Defendants each have filed motions for acquittal and/or new trial.

After the defendants had filed their motions for acquittal and/or new trial, a letter surfaced that Washington McCaskill had written to Orleans Parish ADA Alex Calenda, in which McCaskill characterizes "our Federal Case" as "all made up lies." Given that all defendants seek relief based on the post-trial discovery of this letter, the supplemental

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 1 of 31

motions and the accompanying joint defense motion for an evidentiary hearing, are addressed collectively in the McCaskill Letter to ADA Calenda section of this document.

Rule 29 of the Federal Rules of Criminal Procedure governs motions for judgment of acquittal. A motion for judgment of acquittal challenges the "sufficiency of the evidence to convict." *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007) (quoting *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005)). The court's role is to assess whether a reasonable jury could have properly concluded, weighing the evidence in a light most deferential to the verdict rendered by the jury, that all of the elements of the crime charged were proved beyond a reasonable doubt. *Id.*

Motions for new trial are governed by Rule 33 and they are subject to a different standard than the more-difficult-to-obtain judgment of acquittal. Rule 33 gives the court discretion to grant the defendant a new trial when justice so requires. Fed. R. Crim. Pro. 33(a). In evaluating a Rule 33 motion, the court may weigh the evidence and consider the credibility of the witnesses. *United States v. Fuchs*, 467 F.3d 889, 910 (5th Cir. 2006) (citing *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997)). Consequently, a motion for new trial is evaluated under a more lenient standard than a motion for judgment of acquittal. *Robertson*, 110 F.3d at 1117 (citing *Tibbs v. Florida*, 457 U.S. 31, 44 (1982)).

### *Leroy Price*

Leroy Price was found guilty of the Count 1 RICO conspiracy, the Count 2 drug conspiracy, the Count 3 firearms conspiracy, and the murders of Lester Green, Donald Daniels, Elton Fields, and Michael Marshall. (Rec. Doc. 1003, L. Price Verdict Form). Price moves for judgment of acquittal and/or new trial (Rec. Doc. 1034).

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 2 of 31

The core theme of Price's arguments in support of acquittal on the various counts is that the Government's entire case against him was based on the self-serving testimony of the cooperating witnesses, all of whom had an incentive to lie. Price points to numerous ways in which the cooperators' suspect testimony was uncorroborated: lack of physical/scientific evidence, inconsistencies in reports, lack of surveillance, absent witnesses, and conflicting testimony.

Price cannot obtain any relief based on his Rule 29 challenges to the sufficiency of the evidence. A conviction may be based solely upon the uncorroborated testimony of an accomplice if the testimony is not incredible or otherwise insubstantial on its face. *United States v. Acosta*, 763 F.2d 671, 689 (5th Cir. 1985) (quoting *United States v. Silva*, 748 F.2d 262, 266 (5th Cir. 1984)). All of the cooperators were subject to extensive and lengthy cross-examination by defense counsel. All parties knew from the beginning that the cooperators' credibility was central to the Government's case, and each defendant benefited from every other defendant's attack on the cooperators. The Court allowed extensive discovery as to the cooperators' jailhouse calls. The jury was fully aware of the many credibility issues surrounding the cooperators but the jury nevertheless credited portions of their testimony. Their testimony was not incredible or facially insubstantial.

And as the Government points out in its opposition, the cooperators' testimony was not the sole evidence presented in this case; that is particularly true with respect to the murder of federal informant Michael Marshall. Counsel for Price attempted to impress upon the jury the vulnerabilities in the Government's case where corroboration was lacking, and he did this with respect to each of the charges, but the jury

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 3 of 31

nevertheless was persuaded that the evidence supported a finding of guilt beyond a reasonable doubt. The evidence as to any of the counts for which Price was convicted was not insufficient as a matter of law.

Price was also found guilty of assault with a dangerous weapon in aid of racketeering as to Jamal Smith but the jury acquitted him of the firearms charge pertaining to that same incident. Price contends that these verdicts are inconsistent with each other necessitating an acquittal as to the Count 16 assault. Price also points out that the jury checked "Not Guilty" at some point for Count 16 and then changed its verdict to "Guilty."

As to the Count 16 interrogatory, the Court specifically confirmed with the jury twice during the reading of Price's verdict form that the unanimous verdict for Count 16 was in fact Guilty. The Court then polled the jurors individually to confirm their vote as to Count 16. There is no plausible suggestion that the jury committed a scrivener's error and inadvertently convicted Price as to Count 16 when it meant to acquit him.

Assuming arguendo that the Count 16 and Count 17 verdicts are inconsistent with each other, it does not follow that Count 16 suffers from an insufficiency of evidence, the sole issue with which Rule 29 is concerned. *See United States v. Thomas*, 690 F.2d 358, 374 (5th Cir. 2012). Moreover, as the Government points out in its opposition, the jury would have had sufficient evidence to convict on Count 17 if it had chosen to do so.

Price also joins in the motion for evidentiary hearing (Rec. Doc. 1138) based on the Washington McCaskill letter that surfaced after the trial in this matter. This motion,

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 4 of 31

filed on behalf of all defendants, is addressed below in the McCaskill Letter to ADA Calenda section of this document.

The motion for judgment of acquittal and/or new trial filed by Leroy Price (Rec. Doc. 1034) is DENIED.

### *Ashton Price*

Initially, the Court notes that Ashton Price had filed pro se a motion for new counsel (Rec. Doc. 1090) to represent him in conjunction with his post-trial proceedings. Price has expressed concern on the timeliness of the post-trial motions that were filed by his attorney. The Court has considered the post-trial motions filed by Price's attorney without regard to when they were filed. The motion for new counsel is therefore DENIED.

Ashton Price moves for a new trial (Rec. Docs. 1076 & 1078) based on the Washington McCaskill letter that surfaced after the trial in this matter. In that letter McCaskill characterizes "our Federal Case" as "all made up lies."

Price also joins in the motion for evidentiary hearing (Rec. Doc. 1138) based on the McCaskill letter. This motion, filed on behalf of all defendants, is addressed below in the McCaskill Letter to ADA Calenda section of this document.

The motions for new trial filed by Ashton Price (Rec. Docs. 1076 & 1078), which are premised on the McCaskill letter, are DENIED for the reasons explained below in the McCaskill Letter to ADA Calenda section of this document.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 5 of 31

### *Alonzo Peters*

Alonzo Peters was found guilty of the Count 1 RICO conspiracy, the Count 2 drug conspiracy, the Count 3 firearms conspiracy. (Rec. Doc. 1005, Peters Verdict Form). Peters moves for judgment of acquittal and/or new trial (Rec. Doc. 1033).

In support of his motion for acquittal, Peters points out that Gregory "Rabbit" Stewart was the only cooperator to implicate him for any of the crimes for which he was convicted. Yet the jury rejected Stewart's testimony that implicated Peters in the Kendall Faibvre murder, suggesting that the jury did not find Stewart to be believable.

That the jury did not find Stewart's testimony sufficient to convict Peters of the Faibvre murder does not mean that Stewart's testimony as to the facts supporting the conspiracy counts is incredible, or insufficient to convict on those counts.

Even crediting the cooperators' testimony, Peters contends that it is insufficient to establish that he was part of the specific, larger conspiracies charged in the indictment, and responsible for the drug quantities attributed to him, particularly when considering that Peters and Stewart had both been incarcerated since 2011.

Stewart's testimony was not the sole evidence offered at trial to support the conspiracy convictions. The evidence as a whole, which included Title III calls, testimony from law enforcement, and prior drug convictions was sufficient to support the inference that Peters willingly joined the conspiracies.

As to the drug quantities attributed to Peters, there was sufficient evidence from which the jury could infer that Peters knew or should have known of the massive drug quantities underlying the Count 2 drug conspiracy.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 6 of 31

In support of his motion for a new trial, Peters argues that he was prejudiced by the Court's denial of his request for a severance. Peters points to prejudice in light of the jury obviously attributing his co-defendants' more serious conduct to him, given the undisputed testimony that established that he was at most a minor player. Peters also points to prejudice in having to prepare his case for trial when so large of a part of the evidence necessary to his preparation pertained to other defendants in the case.

Peters along with all of the defendants were charged in the Count 1 RICO conspiracy, and most of the defendants were charged in the Count 2 and Count 3 conspiracies. The Court remains persuaded that it was not necessary to hold 10 separate trials in order to provide any of the defendants with a fair trial. The jury acquitted Peters of the most serious of the charges against him which suggests that the jury was able to discern that Peters was in fact a minor player. The Court's use of individual verdict forms surely helped in this vein. It does not follow, given the sufficiency of the evidence as to the conspiracies, that Peters was convicted on Counts 1-3 unfairly and simply because he went to trial with his codefendants.

Peters also joins in the motion for evidentiary hearing (Rec. Doc. 1138) based on the McCaskill letter. This motion, filed on behalf of all defendants, is addressed below in the McCaskill Letter to ADA Calenda section of this document.

The motion for judgment of acquittal and/or new trial filed by Alonzo Peters (Rec. Doc. 1033) is DENIED.

### *Jasmine Perry*

Jasmine Perry was found guilty of the Count 1 RICO conspiracy, the Count 3 firearms conspiracy, and the murders of Kendall Faibvre and Gregory keys (Rec. Doc.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 7 of 31

1006, Perry Verdict Form). Perry was also found guilty of assault with a dangerous weapon in aid of racketeering as to Jasmine Jones, Albert Hardy, Kelvin Baham, Carrie Henry, and Kendrick Smothers. Perry moves for judgment of acquittal and/or new trial (Rec. Docs. 1035 & 1036).

Perry moves for a new trial contending that he was denied the right to a fair trial because the Government made a prejudicial and inappropriate comment during the cross examination of Jamal Holmes. Specifically, even though the Court had excluded a letter written by Holmes that implicated Perry, and upheld Perry's objection at trial when the prosecution started to question Holmes about the assertions in the letter, the prosecutor made the following comment to the witness in front of the jury: "So, Mr. Holmes, I can't ask you questions about Jasmine Perry so I'm going to move on." Perry complains that the Court did not give a cautionary instruction when this occurred, and Perry was convicted of the Faibvre/Jones murder/shooting. Meanwhile, Alonzo Peters, whose counsel had been questioning Holmes on direct before this occurred, was acquitted of the crime.

The Government correctly asserts in its opposition that the excluded letter was not at issue in the line of questioning. Perry suffered no prejudice from the comment because the jury had already heard Perry's name when the objection was made. Nothing plausibly establishes that Perry's conviction for the Faibvre/Jones incident had anything to do with the prosecutor's comment which reiterated the name that he had already used.

Perry moves for a new trial based on the omission of evidence pertaining to Overt Act 41, which Perry had unsuccessfully moved to strike. The evidence at issue

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 8 of 31

was admitted in accordance with the Court's rulings pertaining to Overt Act 41, which the Court declined to strike. Perry can properly raise this issue on appeal.

Perry moves for new trial based on the Court's refusal to grant a severance. Perry along with all of the defendants were charged in the Count 1 RICO conspiracy, and most of the defendants were charged in the Count 2 and Count 3 conspiracies; Perry was not charged in Count 2. The Court remains persuaded that it was not necessary to hold 10 separate trials in order to provide any of the defendants with a fair trial.

Perry raises several challenges based on sufficiency of the evidence. The core theme of Perry's arguments in support of acquittal on the various counts is that the Government's entire case against him was based on the self-serving testimony of the cooperating witnesses, all of whom had an incentive to lie. Perry points to numerous ways in which the cooperators' suspect testimony was uncorroborated such as lack of physical/scientific evidence.

Perry cannot obtain any relief based on his Rule 29 challenges to the sufficiency of the evidence. As explained above, a conviction may be based solely upon the uncorroborated testimony of an accomplice if the testimony is not incredible or otherwise insubstantial on its face. All of the cooperators were subject to extensive and lengthy cross-examination by defense counsel. All parties knew from the beginning that the cooperators' credibility was central to the Government's case, and each defendant benefited from every other defendant's attack on the cooperators. The Court allowed extensive discovery as to the cooperators' jailhouse calls. The jury was fully aware of the many credibility issues surrounding the cooperators but the jury nevertheless

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 9 of 31

credited portions of their testimony. Their testimony was not incredible or facially insubstantial.

Perry also joins in the motion for evidentiary hearing (Rec. Doc. 1138) based on the McCaskill letter. This motion, filed on behalf of all defendants, is addressed below in the McCaskill Letter to ADA Calenda section of this document.

The motions for judgment of acquittal and new trial filed by Jasmine Perry (Rec. Docs. 1035 & 1036) are DENIED.

### McCoy Walker

McCoy Walker was found guilty of the Count 1 RICO conspiracy, the Count 2 drug conspiracy, the Count 3 firearms conspiracy, and the murders of Lester Green, Jerome Hampton, Renetta Lowe, the latter two with a firearm (Rec. Doc. 1007, Walker Verdict Form). Walker was also found guilty of assault with a dangerous weapon in aid of racketeering as to Jamal Smith. Walker moves for judgment of acquittal and/or new trial (Rec. Doc. 1030).

Much of Walker's Rule 29 argument as to sufficiency of the evidence is based on his characterization of the cooperators' testimony as being incredible and self-serving given that all of the cooperators were hoping to reduce their own sentences. Walker points to the lack of corroborating evidence in the Government's case against him.

As explained above, all of the cooperators were subject to extensive cross-examination by defense counsel and the jury was fully aware of the many credibility issues surrounding their testimony. It was the sole province of the jury to judge the witnesses' credibility and to determine what portions, if any, of their testimony to credit. Moreover, the case against Walker was bolstered by the Title III calls and Detective

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 10 of 31

Cox's surveillance. The evidence as to any of the counts for which Walker was convicted was not insufficient as a matter of law.

Walker contends that the jury's verdict is contradictory and inconsistent because the jury found him guilty of the murder of Lester Green in Count 14 and guilty of assault with a dangerous weapon in aid of racketeering (Jamal Smith) in Count 16 but acquitted him of the firearm charge related to both incidents as charged in Counts 15 and 17.

Assuming arguendo that the verdicts are inconsistent with each other, it does not follow that the counts that the jury did convict on suffer from an insufficiency of evidence for purposes of Rule 29.

Walker also joins in the motion for evidentiary hearing (Rec. Doc. 1138) based on the McCaskill letter. This motion, filed on behalf of all defendants, is addressed below in the McCaskill Letter to ADA Calenda section of this document.

The motion for judgment of acquittal and/or new trial filed by McCoy Walker (Rec. Doc. 1030) is DENIED.

### *Terrioues Owney*

Terrioues Owney was found guilty of the Count 1 RICO conspiracy, the Count 3 firearms conspiracy, and the murders of Lester Green, Jerome Hampton, Renetta Lowe, Donald Daniels, and Elton Fields. (Rec. Doc. 1008, Owney Verdict Form). Owney was also found guilty of assault with a dangerous weapon in aid of racketeering as to Jamal Smith. Owney moves for judgment of acquittal and/or new trial (Rec. Docs. 1028, 1029, 1085).

Owney moves for a Rule 29 judgment of acquittal on all counts contending that the Government's entire against him consisted of the testimony of the cooperators, who

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 11 of 31

were implicitly unreliable and were motivated to lie for their own benefit. Owney points out that there was no independent corroborating evidence presented to support the cooperators' testimony. Owney points out that there was no independent evidence that he ever possessed a firearm, and that he did not meet the description contained in the police reports of the Hampton/Lowe perpetrator.

Owney cannot obtain any relief based on his Rule 29 challenges to the sufficiency of the evidence. As explained above, a conviction may be based solely upon the uncorroborated testimony of an accomplice if the testimony is not incredible or otherwise insubstantial on its face. All of the cooperators were subject to extensive and lengthy cross-examination by defense counsel. All parties knew from the beginning that the cooperators' credibility was central to the Government's case, and each defendant benefited from every other defendant's attack on the cooperators. The Court allowed extensive discovery as to the cooperators' jailhouse calls. The jury was fully aware of the many credibility issues surrounding the cooperators but the jury nevertheless credited portions of their testimony. Their testimony was not incredible or facially insubstantial.[1]

Moreover, the cooperators' testimony was not the only evidence offered against Owney. The wiretaps supported the cooperators' allegations as to Owney. And with respect to the Hampton/Lowe murders, the testimony of Owney's former girlfriend who lived in the apartment complex was credible, circumstantial evidence that Owney had been the one to gain entry into the gated apartment complex. Regarding the gun

---

[1] Codefendant Jasmine Perry has adopted Owney's arguments in support of acquittal on the Count 1 RICO conspiracy.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 12 of 31

conspiracy, there was ample testimony that Owney used firearms in support of the 39ers organization.

Owney moves for a new trial arguing that he was denied a fair trial for several reasons. First, Owney argues that his repeated requests for a severance should have been granted because his codefendants' cross examination of witnesses prejudiced him in a manner that would not have occurred if he had been tried alone. In particular, Owney points to Evans Lewis's cross examination of Tyrone Knockum, which raised the specter of Owney being involved in the 2008 murders of Kendrick Sherman and Durell Pooler. Owney cites *United States v. McRae*, 702 F.3d 806 (5th Cir. 2012), as support for his contention that he should have been granted a severance once the trial progressed and it became obvious that his codefendants could not adequately pursue their own defenses without comprising his defense.

The Court remains persuaded that Owney was not deprived of a fair trial based on the denial of a severance. The Court gave the jury a thorough limiting instruction before Lewis's counsel cross examined Knockum and mentioned Owney with respect to the uncharged murders. The inference suggested by the line of cross was that Knockum had lied about Owney committing the murders. The Court is not persuaded that the jury convicted Owney of the five charged murders in this case based on what occurred during Lewis's cross. And this case is distinguishable from *McRae* because Owney was charged in the Count 1 and Count 3 conspiracies with his codefendants.

Second, Owney moves for a new trial contending that the Government misled the jury when it introduced Darryl Franklin's factual basis which accused Owney of

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 13 of 31

participating in the Calvin Celestine murder even though the Government knew that Franklin was mistaken.

The discrepancies between Franklin's and Stewart's contentions as to the Celestine murder were explored in depth during trial, including by Owney's cross examination of FBI Special Agent Jon Wood. Owney has not established that he suffered any prejudice from the admission of Franklin's factual basis.

Next, Owney contends that the Government violated *Giglio v. United States*, 405 U.S. 150 (1972), when it failed to produce the Amanda Franklin target letter and FBI 302 related to the investigation into Amanda Franklin's criminal activity.

The Court is persuaded that no defendant suffered prejudice from the late production of the Amanda Franklin materials. The defense received any materials regarding Amanda Franklin before the Government concluded its case-in-chief, and the Court told the defense that Darryl Franklin could be recalled to the stand if any defendant wanted to purse the Amanda Franklin matter further.

Finally, Owney contends that the Government committed a prejudicial discovery violation when it produced approximately 169 additional ballistics photographs on the morning that its expert, Meredith Acosta, was called to testify. Because of the untimely production, counsel had less than one business day to review the production, consult with the defense's ballistics expert, and prepare an appropriate cross examination. Owney contends that the Court should have excluded Meredith Acosta from trial under the circumstances.

The Court does not take issue with the contention that the ballistics evidence should have been produced much earlier even though the Court found no bad faith on

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 14 of 31

the part of the Government. Owney's complaints pertaining to the late production are justified but there has been no suggestion that the new photographs undermined Acosta's findings in any specific manner. The Court therefore discerns no prejudice from the late production.[2]

Owney contends that even if none of the foregoing violations individually is sufficient for the Court to grant him a new trial, the cumulative effect of the prejudicial errors and the Government's violations is sufficient to require a new trial. The Court agrees with the Government's observation that non-violations cannot be aggregated into a violation sufficient to trigger a new trial.

Via a supplement, Owney also seeks relief based on the McCaskill letter. Owney joins in the motion for evidentiary hearing (Rec. Doc. 1138) based on the letter. This basis for relief is addressed below in the McCaskill Letter to ADA Calenda section of this document.

The motions for judgment of acquittal and new trial filed by Terrioues Owney (Rec. Docs. 1028, 1029, 1085) are DENIED.

### Evans Lewis

Evans Lewis was found guilty of the Count 1 RICO conspiracy and the murder of Littlejohn Haynes. (Rec. Doc. 1009). Lewis moves for a judgment of acquittal and a new trial (Rec. Doc. 1040).

Lewis contends that the evidence was insufficient to support his conviction on the Littlejohn Haynes murder as part of the Count 1 RICO conspiracy and as a murder in

---

[2] Codefendant Curtis Neville has adopted Owney's arguments pertaining to the ballistics evidence.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 15 of 31

aid of racketeering as charged in Count 29. Lewis argues that the Government failed to prove an essential element of the RICO murder—that Lewis committed the murder for the purpose of gaining entrance to or maintaining or increasing his position in the 39ers enterprise. Lewis points out that Darryl Franklin's testimony makes clear that he, as a leader in the organization, opposed the murder of Haynes, and even tried to persuade him to leave the area to avoid being hit. Further, Washington McCaskill testified that he was upset when he heard about the killing and had considered avenging the murder himself. Although Lewis maintains that he is altogether innocent of the Littlejohn Haynes murder, he points out that the evidence actually presented at trial, if credited, would support the conclusion that Lewis acted outside of the 39ers in committing the murder. Thus, according to Lewis, the Government failed to prove the motive necessary to charge the murder in Counts 1 and 29.

As the Government points out, the evidence presented at trial, which the jury obviously credited, was that Lewis committed the murder with Gregory Stewart, who was a leader in the 39ers organization. Stewart indicated that he wanted to kill Haynes because he had robbed one of his customers of the drugs that had been fronted to him by Stewart. Even if Lewis harbored some personal reason for wanting to kill Haynes (retaliation for Gizz) the jury could have inferred from the evidence presented the self-promotional motive required by 18 U.S.C. § 1959. Lewis is not entitled to a Rule 29 judgment of acquittal as to Counts 1 and 29.

Like his codefendants, Lewis contends that the testimony from the cooperating witnesses was unreliable, and that the jury's findings based on the testimony of these

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 16 of 31

violent sociopaths is inconsistent and irrational, particularly when considering that Lewis actually had an alibi witness for the Littlejohn Haynes murder.

As explained above, a conviction may be based solely upon the uncorroborated testimony of an accomplice if the testimony is not incredible or otherwise insubstantial on its face. All of the cooperators were subject to extensive cross-examination by defense counsel. The jury was fully aware of the many credibility issues surrounding the cooperators but the jury nevertheless credited portions of their testimony. Their testimony was not incredible or facially insubstantial. Likewise, it was within the jury's province to credit or reject the testimony of Lewis's alibi witness.

Lewis moves for a new trial based on several grounds. First, Lewis argues that he was prejudiced by the Court's refusal to give the jury his proposed partial verdict instruction. Lewis contends that the circumstantial evidence suggests that the Littlejohn Haynes murder was the murder that the jury was deadlocked on from the very first day of deliberations when the jury sent out its first note. On the very last day of deliberations the jury sent out another note advising that it was deadlocked on this same murder. Lewis points out that the Court allowed two hours to elapse before addressing the note and in the interim the jury reached a verdict, likely the result of interpreting the Court's silence as an indication that the answer to this note would be the same as the answer to the last one—that the jury must deliberate until reaching a verdict. According to Lewis, if the jury had been given the partial verdict instruction, he likely would not have been convicted of the Littlejohn Haynes murder.

As a matter of law, Lewis was not entitled to the partial verdict instruction at the start of deliberations and the Court acted well within its discretion in denying his

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 17 of 31

request. The Court anticipated that Lewis was going to re-urge his request for the instruction when the jury indicated once again on the last day of deliberations that it remained deadlocked on one of the murders but before the Court could reconvene with counsel the jury reached a verdict. The delay in reconvening with counsel was due solely to the logistics of the lunch hour, during which the jury had continued its deliberations, and the tracking down of all counsel in the case. It is rank speculation to posit that the jurors interpreted the lunchtime delay in answering their question as an indication that the Court was going to dismiss their concerns and force them into a verdict. Moreover, the jury may not have been struggling over the Littlejohn Haynes murder; it could just as easily have been Alonzo Peters' participation in the murder of Kendall Faibvre. The jury acquitted Peters of that murder.

Second, Lewis argues that he should receive a new trial because his case should have been severed from that of the other defendants. Lewis contends that trying the case with all 10 defendants variously charged with 14 murders in an indictment with 47 counts lasting more than six weeks was too unwieldly to fairly assess the guilt of each defendant individually—particularly when considering that nearly all of them had multiple nicknames. Given the number of charges, witnesses, and defendants, juror confusion was inevitable. Lewis contends that *United States v. McRae*, 702 F.3d 806, 824-26 (5th Cir. 2012), demonstrates that limiting instructions could not cure the prejudice.

The Court remains persuaded that no defendant was deprived of a fair trial based on the denial of a severance. Because all defendants were charged in the Count 1 RICO conspiracy, and because most, if not all, of the evidence presented at trial

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 18 of 31

related to an overt act of that conspiracy even when it pertained to conduct as to a single defendant, it is folly to suggest that in a severed trial none of the other defendants' allegedly inflammatory evidence would have been admitted. And this case is distinguishable from *McRae* because Lewis was charged in the Count 1 RICO conspiracy with all of the other defendants.

Third, Lewis contends that he should receive a new trial because it was error to admit his prior guilty plea and factual basis relating to the murder of Gregory Keys. Lewis contends that the jury surely considered the prior murder as propensity evidence when considering his guilt in this case.

The admissibility of the pleas from the 11-107 case was litigated extensively in pretrial motions. The Court declines to revisit those rulings.

Next, Lewis argues that he should receive a new trial because the Court refused to admit the FBI notes of Stewart's July 31, 2014 interview for the purpose of impeaching Stewart. Lewis contends that the notes of the FBI interview directly impeached Stewart's testimony as to the Littlejohn Haynes murder but the Court sustained the Government's objection and excluded the notes. Lewis contends that this was admissible impeachment evidence that the Court improperly excluded.

The Court continues to be persuaded that the agent's notes were not impeachment material as to Stewart because the notes give no indicia that they were a former inconsistent statement *by Stewart*. The notes were the agent's own rendering of what occurred in the interview. Lewis thoroughly cross examined both Agent Wood and Stewart regarding the discrepancies in Stewart's rendition of the facts surrounding the Littlejohn Haynes murder. The notes themselves were not necessary.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 19 of 31

Lewis contends that he should receive a new trial because of the multiple instances of the Government's late disclosure of *Giglio* materials. Lewis contends that the Government failed to produce significant impeachment evidence relating to its witnesses prior to the commencement of trial. As to the Amanda Franklin situation, Lewis contends that he was deprived of the full force of this impeachment evidence because he did not receive it while Franklin was lying to the jury on the witness stand. Lewis contends that he did not learn of Franklin's obstruction of justice scheme as to Bernard Causey until his testimony on direct, at which time it was too late for Lewis to investigate the matter or to otherwise prepare to use it to maximum effect in cross examining Franklin.

Lewis also points to the Rule 35 letter that had been sent to Gregory Stewart's attorney and that was not disclosed until Stewart's own attorney brought it to the parties' attention. Until then, Stewart continued to lie about the promises that the Government had made to him in return for his cooperation.

The Court is persuaded that no defendant suffered prejudice from either the Amanda Franklin situation or the Rule 35 issue, whether considered in isolation or cumulatively. The Court does not take issue with the contention that the Rule 35 letter on behalf of Stewart should have been produced much earlier. But when the oversight was discovered the Court recessed trial for two days in order to allow defense counsel to regroup. When trial resumed Stewart was questioned about the letter at length.

As to Amanda Franklin, Darryl Franklin's candor aside, the defense received any materials regarding Amanda Franklin before the Government concluded its case-in-

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 20 of 31

chief, and the Court told the defense that Darryl Franklin could be recalled to the stand if any defendant wanted to purse the Amanda Franklin matter further.

As to the Bernard Causey scheme, the Court is persuaded that further testimony on this uncharged matter would not have made a difference in the jury's evaluation of Darryl Franklin's credibility, in light of the far more damning evidence that was used to impeach his credibility. And as the Government points out, given that Causey himself contradicted Franklin at trial, the defense garnered the benefit from the obstruction matter of branding Franklin as either an obstructionist or a liar.

Finally, Lewis contends that he should receive a new trial because the Government failed to produce all of the discovery pertaining to Meredith Acosta's ballistics report until one month after the trial had started. Lewis points out that he had raised this issue even before trial in a motion in limine but the Government had only produced some of the relevant materials. By producing the rest of the materials (those that were not irretrievable) they were of no use to Lewis in cross examining Acosta who was scheduled to testify that same day. Lewis contends that his re-urged motion to exclude the expert should have been granted.

The Court does not take issue with the contention that the ballistics evidence should have been produced much earlier even though the Court found no bad faith on the part of the Government. Lewis's complaints pertaining to the late production are justified but there has been no suggestion that the new photographs undermined Acosta's findings in any specific manner, including any matter relating to Lewis's guilt in the Littlejohn Haynes murder. The Court therefore discerns no prejudice from the late production.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 21 of 31

Via a supplement, Lewis also seeks relief based on the McCaskill letter. Lewis, joined by all codefendants, has filed a motion for evidentiary hearing (Rec. Doc. 1138) based on the letter. This basis for relief is addressed below in the McCaskill Letter to ADA Calenda section of this document.

The motion for judgment of acquittal and/or new trial filed by Evans Lewis (Rec. Doc. 1040) is DENIED.

### Curtis Neville

Curtis Neville was found guilty of the Count 1 RICO conspiracy, the Count 2 drug conspiracy, the Count 3 firearms conspiracy, and the murder of Littlejohn Haynes with a firearm (Rec. Doc. 1010, Neville Verdict Form). Neville was also found guilty of assault with a dangerous weapon in aid of racketeering as to Albert Hardy, Kelvin Baham, and Carrie Henry, as well as other drug and gun charges. Neville moves for judgment of acquittal and new trial (Rec. Docs. 1037 1038 & 1039).

Neville moves for acquittal as to all charges related to the Littlejohn Haynes murder contending that the jury's verdict as to him was irrational and inconsistent with the jury's acquittal of other codefendants who the cooperators also implicated in the murder.

To the contrary, the jury's determination that Neville was guilty does not suffer from insufficient evidence for the reasons identified by Neville. Moreover, the Government presented wiretap evidence that Neville had the weapon allegedly used in that murder in his possession shortly after the crime was committed.

Neville moves for acquittal on the Count 2 and Count 3 conspiracies contending that the evidence presented at trial was insufficient to establish that Neville was part of a

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 22 of 31

drug or gun conspiracy. Even if he was proven to be part of the Count 2 drug conspiracy, Neville contends that the evidence was insufficient to prove the quantities attributed to him.

The tools of the heroin drug trade as well as guns and documents belonging to Darryl Franklin and Evans Lewis were found when Neville's house was searched. The evidence at trial, which also included the cooperators' testimony, was sufficient to convict Neville on the Count 2 and Count 3 conspiracies as well as the gun charges.

As to the Count 2 and Count 3 conspiracies, the assault charges, and the other gun charges, Neville contends that the evidence against him was insufficient because it consisted mostly of the testimony of the unreliable cooperating witnesses. Neville points out that there was no evidence that the gun confiscated at his residence was actually used in furtherance of drug activity.

The evidence was sufficient to allow the jury to infer that the guns that were found at Neville's residence were weapons that he possessed, and that they were used in furtherance of drug activity. The guns recovered during the search were found in close proximity to the drug tools. Further, the wiretap calls implicated Neville as to the gun conspiracy.

All of the cooperators were subject to extensive and lengthy cross-examination by defense counsel. All parties knew from the beginning that the cooperators' credibility was central to the Government's case, and each defendant benefited from every other defendant's attack on the cooperators. The Court allowed extensive discovery as to the cooperators' jailhouse calls. The jury was fully aware of the many credibility issues

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 23 of 31

surrounding the cooperators but the jury nevertheless credited portions of their testimony. Their testimony was not incredible or facially insubstantial.

Neville moves for a new trial arguing that the Court erred in not severing his case for trial. Neville points to several instances during the course of the multi week trial where he believes that he was prejudiced by a codefendant's defense. Neville contends that he and Evans Lewis had antagonistic defenses as to the Littlejohn Haynes murder. Neville also argues that the admission of his codefendants' plea agreements in the 11-107 criminal case deprived him of his rights under the Confrontation Clause.

The Court finds no merit to the contention that any of Neville's convictions were influenced by the actions of co-counsel identified in the motion, whether considered in isolation or cumulatively. Mutually antagonistic defenses occur when the acceptance of one party's defense precludes acquittal of the other defendant. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993). Mere conflicts in the defenses do not mean that they are antagonistic so as to rise to the level of a due process violation. Neville and Lewis did not have antagonistic defenses. In fact, they were both found guilty as to the Littlejohn Haynes murder.

At the Court's direction the Government redacted the plea agreements from the 11-107 case even beyond what was necessary to cure any *Bruton* problems. Neville was not entitled to a severance based on the admission of his codefendants' plea agreements.

Neville also joins in the motion for evidentiary hearing (Rec. Doc. 1138) based on the McCaskill letter. This motion, filed on behalf of all defendants, is addressed below in the McCaskill Letter to ADA Calenda section of this document.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 24 of 31

The motions for judgment of acquittal and new trial filed by Curtis Neville (Rec. Docs. 1037 1038 & 1039) are DENIED.

### *Solomon Doyle*

Solomon Doyle was found guilty only of the Count 1 RICO conspiracy. (Rec. Doc. 1011, Doyle Verdict Form). Doyle moves for judgment of acquittal and/or new trial as to that conviction. (Rec. Doc. 1032).

Doyle contends that the only evidence that purported to convict him of something other than the 11-107 drug conspiracy that he already pleaded guilty to came from Stewart and Franklin, whose testimony was incredible in light of the other evidence offered that tended to exonerate Doyle.

The jury weighed the evidence in light of the contradictions that defense counsel highlighted and the jury concluded that Doyle was guilty beyond a reasonable doubt of the Count 1 conspiracy. Counsel for Doyle attempted to impress upon the jury the vulnerabilities in the Government's case where corroboration for the cooperators' testimony was lacking, and he did this with respect to each of the charges, but the jury nevertheless was persuaded that the evidence supported a finding of guilt beyond a reasonable doubt as to Count 1. The evidence was not insufficient as a matter of law.

Via a supplement, Doyle also seeks relief based on the McCaskill letter. Doyle joins in the motion for evidentiary hearing (Rec. Doc. 1138) based on the letter. This basis for relief is addressed below in the McCaskill Letter to ADA Calenda section of this document.

The motion for judgment of acquittal and/or new trial filed by Solomon Doyle (Rec. Doc. 1032) is DENIED.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 25 of 31

### *Damian Barnes*

Damian Barnes was found guilty of the Count 1 RICO conspiracy, the Count 2 drug conspiracy, the Count 3 firearms conspiracy. (Rec. Doc. 1012, Barnes Verdict Form). Barnes moves for judgment of acquittal and/or new trial (Rec. Doc. 1031).

In support of his motion, Barnes points out that the sole evidence to convict him on the conspiracies was testimony from the cooperators, and in particular Gregory "Rabbit" Stewart, who was the only cooperator to implicate Barnes in selling heroin. According to Barnes, that the cooperators were lying and fabricating in order to help themselves is underscored by the fact that the jury rejected the allegation that Barnes participated in the Floyd Moore murder.

Even though the jury did not find the evidence sufficient to convict Barnes of the Moore murder does not mean that the cooperators' testimony as to the facts supporting the conspiracy counts is incredible. The jury was fully aware of the many credibility issues surrounding the cooperators but the jury nevertheless credited portions of their testimony. Their testimony was not wholly incredible or facially insubstantial.

Barnes moves for relief based on the cumulative effect of *Brady* violations pertaining to Stewart's Rule 35 motion and the Amanda Franklin target letter. Barnes also contends that the Government committed a violation of *Napue v. Illinois,* 360 U.S. 264 (1959), when it allowed Darryl Franklin's false testimony regarding his sister Amanda's criminal exposure go uncorrected.

The Court is persuaded that no defendant suffered prejudice from the either the Amanda Franklin situation or the Rule 35 issue whether considered in isolation or cumulatively. The Court does not take issue with the contention that the Rule 35 letter

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 26 of 31

on behalf of Stewart should have been produced much earlier. But when the oversight was discovered the Court recessed the trial for two days in order to allow defense counsel to regroup. When trial resumed Stewart was questioned about the letter at length.

As to Amanda Franklin, Darryl Franklin's candor aside, the defense received any materials regarding Amanda Franklin before the Government concluded its case-in-chief, and the Court told the defense that Darryl Franklin could be recalled to the stand if any defendant wanted to purse the Amanda Franklin matter further.

Barnes reurges his Speedy Trial Act challenge, which the Court has previously rejected twice. The Court declines to revisit those rulings.

Via a reply (Rec. Doc. 1131), Barnes also seeks relief based on the McCaskill letter. Barnes joins in the motion for evidentiary hearing (Rec. Doc. 1138) based on the letter. This basis for relief is addressed below in the McCaskill Letter to ADA Calenda section of this document.

The motion for judgment of acquittal and/or new trial filed by Damian Barnes (Rec. Doc. 1031) is DENIED.

### The McCaskill Letter to ADA Calenda

All defendants raise a claim related to a letter from cooperator Washington McCaskill to Orleans Parish ADA Alex Calenda that surfaced post-trial. McCaskill was cooperating in the State's prosecution of the 3NG trial and was in communication with Calenda. In that letter, McCaskill characterizes "our Federal Case" as "all made up lies." Defendants herein contend that this letter, had it been available to them during trial, would have been a devastating blow to the integrity of the Government's case, which

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 27 of 31

relied so heavily on the uncorroborated testimony of Stewart and Franklin. Defendants contend that the non-production of this letter constitutes a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). And to the extent that the Court considers either the issue of suppression or materiality as open questions that are resolvable in the Government's favor, Defendants contend that an evidentiary hearing is necessary.

Under *Brady*, a defendant's due process rights are violated when the prosecution suppresses evidence that is exculpatory. *United States v. Cessa*, No. 16-50328, -- F.3d --, 2017 WL 2742277 (June 9, 2017). The principle also applies to evidence that could be used to impeach prosecution witnesses. *Id.* (citing *Giglio v. United States*, 405 U.S. 150, 152-54 (1972)). To establish a *Brady* violation the defendant must show 1) that the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; 2) the evidence was suppressed by the prosecution; and 3) the evidence was material. *Cessa*, 2017 WL 2742277, at *3 (quoting *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016)). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.*

The two issues with respect to the McCaskill letter are whether it was suppressed,[3] and if it was, whether it was material under *Brady*. No one questions the veracity of the Government's assertion that the federal prosecution team had not seen McCaskill's letter until counsel for Evans Lewis provided it in April of this year. Lewis

---

[3] Defendants' suppression argument is grounded on their contention that ADA Calenda was part of the federal prosecution team and that the 39ers prosecution in this Court was a joint undertaking between the federal government and the State. Therefore, according to Defendants, any documents in Calenda's 39ers file should be considered as in the possession of the United States Attorney's Office for this district. Defendants contend that the Multi Agency Gang Unit coordinated the parallel state and federal prosecutions of the 39ers cases.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 28 of 31

explained to the Government that he had obtained it from defense counsel in the State's 3NG gang trial. As it turns out, the letter was actually referenced in the state court trial transcript of Kentrell Hickerson and entered into the public record as Exhibit 247 in that trial but both the Government and defense in this case assumed that the referenced letter was *another* McCaskill letter that they already possessed. Thus, neither the Government nor the defense obtained Exhibit 247 from the state court.[4]

The Court recognizes that McCaskill's letter is a direct admission to a prosecutor and therefore differentiates it from jailhouse phone calls to friends and letters to codefendants, but the Court is not persuaded that the letter satisfies *Brady*'s materiality standard. Franklin and Stewart were Government's two most crucial witnesses. But the letter would not have been impeachment material as to either of them directly because they did not author the letter. Rather, McCaskill would have been the one called upon to explain his statement to Calenda. But as to Franklin and Stewart, those witnesses were subject to nearly a week of cross examination during which they parried a multitude of impeachment evidence, including evidence that suggested that those witnesses were less than truthful at times. Thus, even if the McCaskill letter was suppressed, it would only serve to collaterally impeach two witnesses who were already inexorably impeached. The Court is not persuaded that any of the jury's conclusions would have been different if the defense had had the letter during trial. Therefore, it is not material under *Brady*. Defendants' request for an evidentiary hearing or other relief based on the McCaskill letter is DENIED.

---

[4] The Court rejects any suggestion that the letter was not suppressed simply because it was filed into the public record. Defense counsel were not required to troll through the criminal records of Orleans Parish in order for the Government to comply with its obligations under *Brady*.

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 29 of 31

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the motion for judgment of acquittal and/or new trial filed by Leroy Price (Rec. Doc. 1034) is DENIED;

**IT IS FURTHER ORDERED** that the motion for new counsel (Rec. Doc. 1090) filed by Ashton Price is DENIED;

**IT IS FURTHER ORDERED** that the motions for new trial filed by Ashton Price (Rec. Docs. 1076 & 1078) are DENIED;

**IT IS FURTHER ORDERED** that the motion for judgment of acquittal and/or new trial filed by Alonzo Peters (Rec. Doc. 1033) is DENIED;

**IT IS FURTHER ORDERED** that the motions for judgment of acquittal and new trial filed by Jasmine Perry (Rec. Docs. 1035 & 1036) are DENIED;

**IT IS FURTHER ORDERED** that the motion for judgment of acquittal and/or new trial filed by McCoy Walker (Rec. Doc. 1030) is DENIED;

'**IT IS FURTHER ORDERED** that the motions for judgment of acquittal and new trial filed by Terrioues Owney (Rec. Docs. 1028, 1029, 1085) are DENIED;

**IT IS FURTHER ORDERED** that the motion for judgment of acquittal and/or new trial filed by Evans Lewis (Rec. Doc. 1040) is DENIED;

**IT IS FURTHER ORDERED** that the motions for judgment of acquittal and new trial filed by Curtis Neville (Rec. Docs. 1037 1038 & 1039) are DENIED;

**IT IS FURTHER ORDERED** that the motion for judgment of acquittal and/or new trial filed by Solomon Doyle (Rec. Doc. 1032) is DENIED;

**IT IS FURTHER ORDERED** that the motion for judgment of acquittal and/or new trial filed by Damian Barnes (Rec. Doc. 1031) is DENIED;

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 30 of 31

**IT IS FURTHER ORDERED** that the joint motion for evidentiary hearing (Rec.

Doc. 1138) is DENIED.

July 18, 2017

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

15-CR-154 *United States of America v. Leroy Price, et al.*
Defendants' Post-trial motions
Page 31 of 31